UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                 1:22-CR-00034 – LJV-MJR

     v.                           REPORT, RECOMMENDATION
                                 and ORDER

HORMOZ MANSOURI,

               Defendant.
_____

      This case was referred by the presiding judge, the Honorable Lawrence J. Vilardo, to this Court, pursuant to 28 U.S.C. §636(b)(1), to handle all pre-trial matters and and to hear and report upon dispositive motions. (Dkt. No. 16). Before the Court are omnibus motions of defendant Hormoz Mansouri ("defendant"), including motions to dismiss, a motion to strike, and various discovery and disclosure demands. (Dkt. No. 32). For the following reasons, it is recommended that defendant's motions to dismiss and motion to strike be denied. The Court's decisions as to defendant's non-dispositive motions and discovery demands are set forth in detail below.

## BACKGROUND AND PROCEDURAL HISTORY

      On March 10, 2022, a federal grand jury returned a 40-count Indictment charging defendant with the following offenses: (1) conspiracy to commit wire fraud and bank fraud in violation of Title 18, United States Code, Section 1349; (2) twelve counts of bank fraud in violation of Title 18, United States Code, Sections 1344(2) and 2; (3) nineteen counts of wire fraud in violation of Title 18, United States Code, Sections 1343 and 2; and (4) eight counts of money laundering in violation of Title 18, United States Code, Section

1957(a). (Dkt. No. 14). The Indictment alleges that between April 2020 and February 2021, defendant was the owner or managing partner of seven limited liability companies and two corporations, which he used to defraud specified financial institutions, financial services companies, and the Small Business Administration ("SBA") by fraudulently obtaining funds available through the Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan ("EIDL") Program, which programs were established by the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), enacted on or about March 27, 2020. (*Id*.). These programs were enacted by the Federal Government to provide emergency financial assistance loans and other economic relief to businesses suffering the effects of the COVID-19 pandemic. (*Id*.). It is alleged that defendant and unindicted co-conspirators submitted multiple fraudulent PPP loan and EIDL applications in the names of certain business entities by making false and fraudulent representations regarding monthly payroll expenses, number of employees, payroll registers, revenues, costs of goods sold, as well as by submitting false and fraudulent State and Federal tax forms. (*Id*.). It is further alleged that defendant engaged in money laundering transactions involving property derived from unlawful activity, i.e., bank fraud and wire fraud. (*Id*.). The Indictment also seeks forfeiture of funds in the approximate amounts of $3,525,032.70 and $346,124.94 in United States currency held in nine bank accounts and one 2017 Lexus LX570 vehicle allegedly obtained by defendant as a result of the charged criminal violations. (*Id*.).

Defendant filed omnibus motions seeking, *inter alia*, to dismiss the Indictment, to strike language from the Indictment, and making various discovery and disclosure demands. (Dkt. No. 32).

The Government has responded in opposition to defendant's motions. (Dkt. No. 35). Defendant filed a reply memorandum. (Dkt. No. 41). Oral argument was held before this Court on March 8, 2023. During oral argument, the Court requested additional briefing. On May 17, 2023, the Government and Defendant submitted supplemental memoranda. (Dkt. No. 55; 56). On May 31, 2023, the Government submitted a reply. (Dkt. No. 57). At that time, the Court considered the matter submitted for decision.

## DISCUSSION

### Motions to Dismiss

Defendant moves for the following relief: (1) dismissal of all counts of the Indictment for failure to include certain necessary elements of the offenses charged; (2) disclosure of grand jury minutes and dismissal of the Indictment on the grounds of misconduct in presentation to the grand jury; (3) disclosure of grand jury minutes and legal instructions and dismissal of the Indictment due to multiplicity; and (4) dismissal of the Indictment due to duplicity. (Dkt. No. 32, ¶¶ 36-62, 175-77.). In the alternative, pursuant to Fed. R. Civ. P. 7(d), defendant moves to strike portions of the allegations as surplusage. (*Id*., ¶¶ 63-68). The Government opposes these motions, arguing that the Indictment is sufficient and contains no multiplicious or duplicitous counts, nor surplusage language. (Dkt. No. 35, pgs. 8-20). The Government further argues that there was no irregularity in the grand jury and no basis for disclosure of grand jury materials. (*Id*.).

a. *Sufficiency of the Indictment*

Defendant first seeks dismissal of the Indictment on the basis that certain necessary elements of each of the counts were not adequately pled. Defendant makes three main arguments, each of which he believes directs a finding that that Indictment is

3

legally insufficient. Defendant argues that the Indictment: (1) fails to allege the existence of a scheme to defraud based on material misrepresentations made with fraudulent intent; (2) fails to allege the required specific intent to harm property; and (3) fails to identify a specific wire transmission. (Dkt. No. 32, ¶ 41). Defendant also argues that the money laundering charges must be dismissed because the transactions did not involve proceeds from a crime.

The Federal Rules of Criminal Procedure require that an indictment should be "a plain, concise, and definite written statement of the essential facts constituting the offense charged […]." Fed. R. Crim. P. 7(c)(1).  A criminal defendant is entitled to an indictment that states the essential elements of the charge against him. *United States v. Pirro*, 212 F.3d 86, 91 (2d. Cir. 2000). An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974). The Second Circuit has repeatedly confirmed that "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) (quoting *United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir. 1975)). An indictment must also "be read to include facts which are necessarily implied by the specific allegations made." *Id*. (quoting *United States v. Silverman*, 430 F.2d 106, 111 (2d Cir. 1970)).

"[T]he essential elements of a mail [or wire] fraud violation are (1) a scheme to defraud, (2) money or property [as the object of the scheme], and (3) use of the mails [or

wires] to further the scheme." *Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004); *see* 18 U.S.C. § 1343. Similarly, the federal bank fraud statute makes criminal the "knowing[] execut[ion]" of a scheme to "defraud a financial institution." *United States v. Bouchard*, 828 F.3d 116, 124 (2d Cir. 2016) (quoting 18 U.S.C. § 1344). The elements of a conspiracy charge are: "(1) an agreement between at least two people to commit an unlawful act, and (2) the defendant's knowing engagement in the conspiracy with the specific intent that the object of the conspiracy be committed." *United States v. Zemlyansky*, 908 F.3d 1, 10 (2d Cir. 2018) (citing *United States v. Roy*, 783 F.3d 418, 421 (2d Cir. 2015) (per curiam) (no overt act requirement for conspiracy under 18 U.S.C. § 1349)). Last, the money laundering statute prescribes punishment for anyone who "knowingly engages or attempts to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity […]." *See* 18 U.S.C. § 1957(a).

Defendant argues that the fraud offenses he is charged with fail to allege the components of a "scheme to defraud," one of the essential elements of these offenses. Relying on the Second Circuit cases of *United States v. Weaver*, 860 F.3d 90 (2d Cir. 2017) and *United States v. Calderon*, 944 F.3d 72 (2d Cir. 2019), Defendant asserts that the Government must "prove and plead the materiality of defendant's false statements or misrepresentations" to establish a scheme to defraud. (Dkt. No. 32, ¶ 37).

As explained in *Weaver*, in order to establish the existence of a scheme to defraud, the government must *prove* that the misrepresentations were material and that the defendant acted with fraudulent intent. *See* 860 F.3d at 94; *see also Calderon*, 944 F.3d at 85 ("Both wire fraud and bank fraud require the Government to prove that the defendant

had an intent to deprive the victim of money or property. Moreover, to establish the existence of a scheme to defraud, the Government must prove the materiality of a defendant's false statements or misrepresentations."). The materiality of a misrepresentation is shown by its tendency to influence the decision of a decision-maker. *See Neder v. United States*, 527 U.S. 1, 16 ("a false statement is material if it has 'a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed"); *United States v. Rigas*, 490 F.3d 208, 234 (2d Cir. 2007) (in order to be "material" the false representations must have "probative weight, i.e. reasonably likely to influence the [bank] in making a determination required to be made").

However, the Indictment must only allege, not prove, materiality. Neither *Weaver* nor *Calderon* stand for the proposition that the Government must prove materiality of a defendant's false statements or misrepresentations within the Indictment. Rather, these cases address whether the government adequately proved the element of materiality at trial. Here, the conspiracy, bank fraud, and wire fraud counts in the Indictment plainly allege that defendant committed the offenses "by means of materially false and fraudulent pretenses, representations, and promises." (Dkt. No. 14, ¶¶ 27, 35, 37). Despite defendant's assertion that the Government "should have pled how the false statements, claims, or documents were material to the fraud," there is no inadequacy in the Indictment. Any challenge by defendant to the sufficiency of the evidence is misplaced at this stage. *See United States v. Ramos*, 12-CR-556, 2013 U.S. Dist. LEXIS 67030, *12 (S.D.N.Y. May 8, 2013) ("[T]here is no summary judgment procedure in criminal cases. Nor do the Rules provide for a pre-trial determination of sufficiency of the evidence."). Nonetheless,

6

the Government will have the burden of proving materiality and intent, along with each of the essential elements of the offenses at trial.

Defendant next argues that the Indictment should be dismissed because he lacked intent to defraud. He reasons that because the PPP and EIDL programs were quickly put in place, without education for the program applicants about program eligibility and other requirements, applicants did not understand the requirements. He claims that the SBA created "transitional rules" from 2020 to 2021 which changed "from time to time" what was expected of an applicant. He questions whether the rules were instructional or advisory and whether the law criminalizes conduct that was not obedient to those rules.

"Essential to a conviction under the 'scheme to defraud' clause of the mail fraud statute is a showing of fraudulent intent: i.e., intent to deceive *and* intent to cause actual harm." *United States v. Chandler*, 98 F.3d 711, 715 (2d Cir. 1996) (emphasis in original). "Misrepresentations amounting only to a deceit are insufficient to maintain a mail or wire fraud prosecution. Instead, the deceit must be coupled with a contemplated harm to the victim." *United States v. D'Amato*, 39 F.3d 1249, 1257 (2d Cir. 1994); *accord United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987). Indeed, the Second Circuit has held that an indictment "is required to allege that the defendant contemplated actual harm that would befall victims due to his deception in order to meet the 'scheme to defraud' prong" of the wire fraud statute." *United States v. Parlato*, 15-CR-149, 2017 U.S. Dist. LEXIS 107302, *20 (W.D.N.Y. Feb. 13, 2017) (citations omitted).

Here, as Government argues, the Indictment alleges that defendant devised and intended to devise a scheme to defraud and provides specific allegations of conduct demonstrating that intent. *See United States v. Laux*, 14-CR-229, 2015 U.S. Dist. LEXIS

55436, *11 (E.D. Wis. Apr. 24, 2015) ("[R]ather than using the conclusory phrase '[the defendant] acted with intent to defraud,' the indictment went one step further and listed a plethora of allegations (presumed true for this motion) that established that [defendant] acted with the intent to defraud."). Here, the Indictment states that the purpose of the alleged scheme was for the defendant to unjustly enrich himself and his businesses by fraudulently obtaining funds available through the PPP and EIDL programs. It sets forth the purpose of these programs and information considered material for eligibility, including the business entity's number of employees, average monthly payroll, and cost of goods sold. It identifies each entity owned or managed by defendant which submitted applications for these programs. It sets forth how the defendant furthered the scheme by submitting and causing to be submitted PPP and EIDL applications that contained materially false and fraudulent representations about monthly payroll expenses, number of employees, and cost of goods. It further details false and fraudulent Internal Revenue Service and New York State tax forms which defendant submitted to further the scheme. Lastly, the Indictment details the specific wire communications by date, the entities that applied for the loans, and the date and description of each relevant transaction. Indeed, courts have commonly upheld the facial validity of indictments charging wire, mail, or bank fraud with far less specificity than the Indictment alleges here. *See, e.g., United States v. King*, 98-CR-91, 1999 U.S. Dist. LEXIS 21530, *24-25 (Dec. 16, 1999), *report and recommendation adopted by* 2000 U.S. Dist. LEXIS 4477 (W.D.N.Y. Mar. 24, 2000) (denying motion to dismiss indictment where defendant's intent to defraud a not-for-profit corporation could be inferred from the indictment's detailing of wire transfers of the foundation's funds to accounts created for defendant's own benefit and alleged

nondisclosures of material information which defendant had a duty to reveal); *United States v. Klein*, 03-CR-1471, 2004 U.S. Dist. LEXIS 9672, *11 (S.D.N.Y. May 27, 2004) (finding bank fraud count to be facially sufficient where it "pleads all of the necessary elements of the offense and provides a brief description of the nature of the bank fraud scheme, including the applicable timeframe, location, method, object, and some of the alleged participants and victims.").[1]

The Government further argues that beyond the essential elements of the offenses, which have been clearly and specifically pled, defendant's intent to defraud is a question for the jury. It submits that the crux of defendant's argument concerns the proof that that will be elicited from evidence at trial, rather than the facial sufficiency of the indictment. Indeed, a defendant's claim of lack of knowledge or lack of intent does not invalidate an indictment. It is well-settled that a facially valid indictment is not subject to challenge based on the quality or quantity of evidence. *See United States v. Williams*, 504 U.S. 36, 54 (1992).

Next, Defendant contends that the Indictment must be dismissed for lack of "property" to be defrauded because the money was a loan that was going to be paid back.

---

[1] The reasoning in a recent District Court case further refutes defendant's attempt to blur the lines between SBA rules about PPP loans and the elements of a fraud offense. There, the Court prohibited the Government from arguing that the use of the loan funds to purchase residential real estate was a *per se* prohibited use of PPP loan funds. *See United States v. Schampers*, 22-CR-31, 2023 U.S. Dist. LEXIS 17318, *9-11 (E.D. Wis. Jan. 30, 2023). The Court explained, "[t]he defendant is charged with Wire Fraud, not violation of the PPP. The issue to be decided at trial is whether the defendant, with intent to defraud, 'falsely claimed that he intended to spend the loan proceeds on payroll, lease and mortgage expenses, interest, and utilities,' [] and whether any such representation, if false, was material. In other words, the issue is whether the defendant acted fraudulently, not whether he violated the SBA interim rule governing the PPP." *Id*. Moreover, in *United States v. Crowther, infra*, the District Court rejected the defendant's argument that his bank fraud and false statement convictions should be overturned because of the ambiguous and confusing nature of the CARES Act requirements and interpreting rules. *See* 2021 U.S. Dist. LEXIS 116600, at *2-3. There, the Court explained: "Defendant was not charged with violating the CARES Act. The four offenses relate to defendant's misrepresentations to secure a loan, and then the use of the loan proceeds for various monetary transactions. While the CARES Act and PPP were obviously relevant to the facts of the case, defendant's reliance on them for acquittal is misplaced." *Id*.

It is defendant's theory that although expungement of a PPP loan was possible under the CARES Act, there was no guarantee that such a loan would be discharged. Further, he argues that the EIDL loans were not dischargeable and had to be repaid. Additionally, he objects that the Indictment "does not specifically address what entity, if at all, would be subjected to losing its property rights." (Dkt. No. 41, pg. 3). Defendant believes that the Indictment fails to identify what cognizable property interest was the object of the alleged scheme.

The Supreme Court has stated that the fraud statutes are "limited in scope to the protection of property rights" and has held that the prohibition on fraud is restricted to schemes to deprive other people of money or property, rather than to deprive individuals of other rights, such as "the intangible right of citizenry to good government." *McNally v. United States*, 483 U.S. 350, 356, 360 (1987).[2] The words "to defraud" commonly refer "to wronging one in his property rights by dishonest methods or schemes," and "usually signify the deprivation of something of value by trick, deceit, chicane or overreaching." *Id.,* at 358; *see also Cleveland v. United States*, 531 U.S. 12, 19 (2000). The Second Circuit has also held that if there is no property right with which the defendant might interfere, then a defendant's plan to make misleading statements to the State, or other intended victim, would not constitute a scheme to defraud. *United States v. Pierce*, 224 F.3d 158 (2d Cir. 2000).

---

[2] The Court notes that following *McNally*, which addressed a kickback scheme involving a state public officer in Kentucky, the definition of "scheme or artifice to defraud" under 18 U.S.C. § 1346 was amended to include a scheme or artifice to deprive another of the intangible right of honest services. As the Supreme Court later observed, Section 1346's proscription on bribes and kickbacks was part of "Congress' undoubted aim to reverse *McNally* on its facts." *See Skilling v. United States*, 561 U.S. 358, 410 (2010).

The case in *Pierce* involved prosecution of two defendants, who were residents of the St. Regis Mohawk Indian Reservation, and several others accused of conspiracy to launder money derived from unlawful activity. *See* 224 F.3d at 160. The specified unlawful activity was a wire-fraud scheme to defraud the Canadian government of tax and duty revenue by transporting liquor from the United States to Canada through the Reservation, in violation of 18 U.S.C. § 1343. *Id.* After the government failed to elicit proof at trial that the Canadian government actually imposes duty or taxes on such importation or sale of liquor, the Second Circuit found that the convictions could not stand. *Id.* This was because the existence of such a duty or tax payable was essential to proving the scheme to defraud alleged in the indictment, and thus the Government had failed to establish a fact necessary to prove the wire fraud offense. *Id.* As the Court explained, "[t]he Pierces are not accused of scheming to defraud the Canadian government of its property, but of its right to obtain property, its *right* to be paid money. To prove the existence of a scheme to defraud the Canadian government the prosecution had to prove the existence of such a right. Without it there was no 'money or property,' of which the Canadian government could be defrauded." *Id.*, at 165-66 (internal quotation omitted).

Recently, the Supreme Court's decision in *Ciminelli v. United States*, 143 S. Ct. 1121 (2023), rejected a "right-to-control" theory which has been applied by the Second Circuit to support federal fraud convictions based on harm to intangible interests unconnected to property. This theory held that "the property interests protected by the wire fraud statute include the interest of a victim in controlling his or her own assets," thus "a cognizable harm occurs where the defendant's scheme denies the victim the right to control its assets by depriving it of information necessary to make discretionary economic

decisions." *Id*., 143 S. Ct. at 1127. Disagreeing that such information constitutes a protected interest, the Court affirmed that the wire fraud statute "reaches only traditional property interests" and cannot be expanded without statutory authorization. *Id*., at 1128.

Defendant argues that the Government's theory here is analogous to the "right-to-control" theory which has been repudiated by the Supreme Court. He states that these charges merely involve the deprivation of economic information to the financial institutions, which is not the type of property interest that can serve as a predicate for a federal fraud conviction. He also submits that because of a lack of clarity in the Government's theory of fraud, the rule of lenity should apply to resolve any ambiguity in his favor. *See generally United States v. Bass*, 404 U.S. 336, 347-48 (1971).

The Court disagrees. In *Ciminelli*, the alleged fraud centered around a scheme to defraud intangible property rights. Specifically, the case involved a conspiracy to rig the process for issuing requests for proposals for contractors seeking to become "preferred developers" that would be given first opportunity to negotiate and obtain contracts for publicly funded development projects in upstate New York. *See* 143 St. Ct. at 1125. Ciminelli conspired with others to ensure that his company would be selected as a preferred developer for valuable "Buffalo Billion" projects. *Id*. Ciminelli and his co-conspirators were charged with wire fraud and conspiracy under the theory that they schemed to deprive the government of potentially valuable economic information relevant to controlling its assets. *Id*. The Supreme Court overturned the conviction because, under the government's theory, an intangible interest, rather than money or property, was the object of the scheme. *Id*., at 1127-28.

Here, defendant's alleged scheme was monetary. Unlike in *Ciminelli*, the Government here presses a traditional theory of money being the object of this fraud. *See Pasquantino v. United States*, 544 U.S. 349, 355-56 (2005) (opining that the interpretation of the phrase "money or property" relies on giving the words their ordinary meaning). The object of defendant's fraud in this case was money that belonged to the financial lenders and to the SBA. Loan applications containing material misrepresentations were the means defendant used to deprive the lenders and the SBA of their money and property. Contrary to defendant's arguments, these fraudulent loan applications invoked traditional property interests. *See United States v. Jesenik*, 3:20-CR-228, 2023 U.S. Dist. LEXIS 85080, *5-6 (D. Or. May 15, 2023) ("The object of the alleged scheme was not 'control' or 'information,' but money itself. And *Ciminelli* says nothing about federal criminal liability for such schemes, which are the archetypal subject of federal fraud prosecutions."). Further, because the Indictment alleged wire fraud and bank fraud under a traditional theory, it cannot be viewed as vague or ambiguous. Despite, defendant's arguments, neither *Ciminelli*, *McNally,* nor *Pierce* is analogous to this situation, and defendant has not provided persuasive authority to support his position.

Defendant states that because there is limited caselaw on the validity of prosecutions of PPP or EIDL applicants, there is no clear showing that he violated any existing law. Based upon this, defendant argues that because of the backing of the loans by the SBA and his intent to repay, these loans cannot constitute a deprivation of property to the government or another party. Such an argument has been rebutted by Supreme Court when interpreting fraud statutes. *See Shaw v. United States*, 580 U.S. 63, 67-68 (2016) (holding it "'sufficient' that the victim (here, the bank) be 'deprived of its right' to

use of the property, even if it ultimately did not suffer unreimbursed loss"); *Loughrin v. United States*, 573 U.S. 351, 366 n.9 (2014) (disagreeing that the bank fraud statute requires the government to prove that the defendant's scheme created a risk of financial loss to the bank). The Second Circuit has confirmed that a defendant "does not need to literally 'obtain' money or property" to violate a mail fraud statute because the statute criminalizes the intent to deprive another of property by scheme or artifice to defraud. *See Porcelli v. United States*, 404 F.3d 157, 162 (2d Cir. 2005); *see also United States v. Males*, 459 F.3d 154, 158-59 (2d Cir. 2006) (rejecting defendant's argument that he could not be properly convicted of wire fraud because his intended temporary use of an investor's pension account did not amount to "obtaining" money or property). Here, even if defendant was current on each alleged fraudulent loan,[3] he may still be held criminally liable because the fraud statutes prohibit the scheme to defraud, rather than the completed fraud.

Indeed, several courts have determined that similar allegations of fraudulent conduct in connection with obtaining PPP loan funds were sufficient to support indictments for wire fraud and bank fraud offenses. *See, e.g., United States v. Sheppard*, 22-CR-20290, 2023 U.S. Dist. LEXIS 9564, *5-9 (S.D. Fla. Jan. 19, 2023) (finding indictment sufficient to inform defendant of charges regarding misrepresentations made in loan applications); *United States v. Okojie*, 4:22-CR-84, 2022 U.S. Dist. LEXIS 235969, *9 (S.D. Ga. Dec. 22, 2022), *adopted by* 2023 U.S. Dist. LEXIS 7883 (S.D. Ga. Jan. 17,

---

[3] In fact, the Government submits that as of April 2023, defendant has made no payments on any of the seven EIDL loans and the eight PPP loans are in "default status and contain investigative holds thereby preventing forgiveness; 1 was defaulted on and 7 were forgiven." (Dkt. No. 56, pg. 10). The Government also submits that, based on the information it currently possesses, some of the forgiveness applications appear to contain materially false and fraudulent pretenses and representations similar to those submitted to support the loans. (*Id.*).

2023) (denying request for bill of particulars); *United States v. Lawson*, 3:21-CR-00006, 2022 U.S. Dist. LEXIS 59244, *12-19 (N.D. Ga. Feb. 2, 2022), *adopted by* 2022 U.S. Dist. LEXIS 58829 (N. Ga. Mar. 30, 2022) (denying request for bill of particulars).

In *United States v. Crowther*, 20-CR-114, 2021 U.S. Dist. LEXIS 116600 (M.D. Fla. June 23, 2021) *aff'd by* 2023 U.S. App. LEXIS 13865 (11th Cir. June 5, 2023) (per curiam)*,* the defendant was convicted of bank fraud and other offenses related to his applying for and receiving a federally guaranteed bank loan under the Paycheck Protection Program of the CARES Act. That Court denied defendant's motion for a post-verdict judgment of acquittal despite defendant's argument that he "gave the bank exactly what it bargained for, i.e., a promissory note on a performing loan for which the first payment has not yet come due, and (2) the bank does not consider itself a victim." *Id*., at *4. The Court found that the evidence presented at trial (that defendant used false and fraudulent representations to obtain a low interest loan from the bank he otherwise would not have been able to obtain, that defendant used the loan for personal expenditures, and that defendant attempted to hide his actions) was sufficient for the jury to conclude that the defendant acted with intent to defraud. *Id*., at *4-5. As the Court explained, "[t]he fact that the bank may not consider itself a victim or has not suffered a financial loss is not dispositive." *Id*., at *5 (citing *United States v. Estapa*, 998 F.3d 898 (11th Cir. 2021); *United States v. Maxwell*, 579 F.3d 1282, 1302 (11th Cir. 2009)).

Lastly, Defendant asserts that the money laundering charges must be dismissed because the transactions did not involve proceeds from a crime. As defendant's argument appears to be wholly dependent on the Court finding that the Indictment is substantively invalid in another regard, the Court rejects this claim.

15

In sum, the Court finds that each of the counts of the Indictment tracks the language of the relevant statues and states the elements of each offense with enough factual specificity to permit defendant to prepare a defense. Therefore, the pleading requirements of Fed. R. Crim. P. 7(c)(1) are met. For these reasons, the Court recommends that defendant's motion to dismiss based on insufficiency of the Indictment be denied.

### b. Multiplicity of Charges

Defendant next moves to dismiss certain counts of the Indictment as multiplicitous. He argues that the Indictment charges the same conduct (wire fraud, bank fraud, and money laundering) in different forms, in violation of the Double Jeopardy Clause of the Fifth Amendment.

"An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed." *United States v. Chacko*, 169 F.3d 140, 145 (2d Cir. 1999). A multiplicitous indictment violates the Double Jeopardy clause of the Fifth Amendment by subjecting a person to punishment for the same crime more than once. *See United States v. Regensberg*, 604 F. Supp. 2d 625, 629 (S.D.N.Y. 2009).

In *United States v. Nakashian*, the Second Circuit explained that a multiplicity challenge requires a three-step inquiry to determine whether Congress intended to authorize multiple punishments for conduct that violates two statutory provisions. *See* 820 F.2d 549, 551 (2d Cir.). First, if the offenses charged are set forth in different statutes or in distinct sections of a statute, and each section unambiguously authorized punishment for a violation of its terms, it is ordinarily to be inferred that Congress intended to authorize

punishment under each provision. *Id*. It must next be determined whether the two offenses are sufficiently distinguishable from one another that the inference that Congress intended to authorize multiple punishments is a reasonable one. *Id*. The *Blockburger* test is utilized to make a determination on this point. *Id*.; *see Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."). The final step is to test the tentative conclusion that multiple punishments are authorized against the legislative history of the statutory provisions or discover whether a contrary Congressional intention is disclosed. *Nakashian*, 820 F.3d at 551.

Here, the Government argues that because Congress has separately criminalized wire fraud, bank fraud, and money laundering, it is clear that Congress intended to authorize separate punishments for the conduct in question. The Court agrees. In *United States v. Holmes*, the Second Circuit considered whether embezzled funds that were also the subject of laundering charges could be charged as both embezzlement and money laundering. *See* 44 F.3d 1150, 1153-54 (2d Cir. 1995). The Court concluded that they were separate offenses, stating: "Congress has clearly signaled its intent to treat the money laundering and structuring as an offense separate from the underlying criminal conduct that generated the laundered or structured funds. It also intended to impose separate punishments for these offenses." *Id*.[4]  The same principle applies to the substantive wire fraud and bank fraud charges alleged in this Indictment.

---

[4] Additionally, "it is well settled that the transaction charged as money laundering cannot be the same transaction through which the funds became tainted by crime." *United States v. Shellef*, 732 F. Supp. 2d

Even if the crimes at issue are based on identical facts or proof, the focus is on the statutory elements of each offense. *See, e.g., Chacko*, 169 F.3d at 146 ("It is not determinative whether the same conduct underlies the counts; rather, it is critical whether the 'offense' -- in the legal sense, as defined by Congress -- complained of in one count is the same as that charged in another."); *United States v. Biasucci*, 786 F.2d 504, 516 (2d Cir. 1986) ("If each *statute* requires proof of a fact that the other does not, the *Blockburger* test is satisfied, even if the same proof is used at trial to establish both crimes.") (emphasis in original); *United States v. Langella*, 776 F.2d 1078, 1082 (2d Cir. 1985) (holding that even if both convictions were based on identical conduct, the law requires courts to "focus on the provisions of the statutes involved, rather than on the evidence adduced at trial" to determine whether punishment was proper under Blockburger). In fact, the Third Circuit has held that "the same set of facts can support convictions for mail fraud, wire fraud, bank fraud and securities fraud without giving rise to multiplicity problems" because each of those offenses requires proof of fact which the others do not. *Bald Eagle Sch. Dist. v. Keystone Fin*., 189 F.3d 321, 330 (3d Cir. 1999).

Here, the Indictment charges the defendant with bank fraud, wire fraud, money laundering, and conspiracy to commit bank fraud and wire fraud. Thus, the indictment alleges violations of four distinct statutes, each with different elements. Because each of the charged offenses requires proof of an additional fact or facts that the others do not, there is no risk of multiplicity within the Indictment.

---

42, 72-73 (E.D.N.Y. 2010) (citations omitted). "[F]unds become proceeds [of a specified unlawful activity] when they are 'derived from an already completed offense, or a complete phase of an ongoing offense." *United States v. McCarthy*, 271 F.3d 387, 395 (2d Cir. 2011) (citation omitted).

Furthermore, even if the Court were to find that the counts were multiplicious, which it does not, dismissal at this time is not warranted. Indeed, all conduct would be grouped as relevant conduct at sentencing, and defendant would not be punished twice for the same conduct. *See United States v. Reed*, 639 F.2d 896, 905 n. 6 (2d Cir. 1981) ("An indictment that is multiplicious is not fatal and does not require dismissal. […] [M]ultiple sentences for the same offense can be remedied at any time by merging the convictions and permitting only a single sentence.") In *Reed*, the Second Circuit noted that a defendant may move to have the prosecution choose among the multiplicious counts, but dismissal is a matter for trial court discretion and is "most appropriate when the mere making of the charges would prejudice the defendant with the jury." *Id*. Based on this, the Court recommends denial of the motion to dismiss without prejudice to renewal before the District Court at an appropriate time.

### c. Duplicity of Indictment

Defendant also moves to dismiss certain counts of the Indictment as duplicitous. He argues that the first count of the Indictment, which charges conspiracy to commit wire fraud and bank fraud, charges separate offenses in the same count and thus requires dismissal.

An indictment is impermissibly duplicitous where: 1) it combines two or more distinct crimes into one count in contravention of Fed. R. Crim. P. 8(a)'s requirement that there be a 'separate count for each offense,' and 2) the defendant is prejudiced thereby." *United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001). A count is not duplicitious if it charges a single crime committed by more than one means. *See* Fed. R. Crim. P. 7(c) ("A count may allege that the means by which the defendant committed the offense are

19

unknown or that the defendant committed it by one or more specified means."). The policy considerations underlying the prohibition against duplicitous indictments include: (1) avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another; (2) avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged; (3) assuring the defendant adequate notice; (4) providing the basis for appropriate sentencing; and (5) protecting against double jeopardy in a subsequent prosecution. *United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992) (citing *United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981)).

The Second Circuit "has long held that acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme." *United States v. Vilar*, 729 F.3d 62, 79 (2d Cir. 2013); *see also United States v. Williams*, 705 F.2d 603, 624 (2d Cir. 1983) (quoting *Braverman v. United States*, 317 U.S. 49, 54 (1942)) ("The allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for 'the conspiracy is the crime, and that is one, however diverse its objects."). Indeed, when the charge is conspiracy, an indictment is not duplicitous simply because it alleges that the conspiracy had multiple objects, and "[a]s long as the essence of the alleged crime is carrying out a single scheme to defraud, then aggregation is permitted." *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989).

Here, Count 1 charges a single scheme to defraud financial institutions and the SBA, with multiple objects of that scheme. Therefore, aggregation of the allegations is permissible. Further, even if the Court were to conclude Count 1 was duplicitous, which it

does not, the remedy before trial is reformulation of the indictment rather than dismissal. *See United States v. Droms*, 566 F.2d 361, 363 n.1 (2d Cir. 1977) ("Duplicity, of course, is only a pleading rule and would in no event be fatal to the count."). In other words, the prosecutor could elect to proceed on one of the duplicitous charges, and redact the indictment accordingly, or the Court could remove the potential prejudice through a curative jury instruction. *United States v. Posey*, 16-CR-87, 2021 U.S. Dist. LEXIS 190074, *6-7 (W.D.N.Y. Oct. 1, 2021); *see also United States v. Felder*, 14-CR-546, 2016 U.S. Dist. LEXIS 55604, *8-9 (S.D.N.Y. Apr. 22, 2016) ("It is assumed that a general instruction on the requirement of unanimity suffices to instruct the jury that they must be unanimous on whatever specifications they find to be the predicate of the guilty verdict.").

Based on this, the Court recommends denial of the motion to dismiss without prejudice to renewal before the District Court at an appropriate time.

### d. Misconduct in Presentation to Grand Jury

Defendant also moves for disclosure of the grand jury minutes and dismissal of the Indictment based on misconduct before the grand jury. Defendant asserts that he is the subject of a "bare bones" Indictment and has particularized need for transcripts of the grand jury proceedings. He offers no facts to support this need or his claim of misconduct.

Rule 6(e) of the Federal Rules of Criminal Procedure provides that a court may authorize disclosure of a grand jury matter "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." The burden is on the defense to show that "a particularized need" exists for the minutes which outweighs the policy of secrecy. *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959); *see United States v. Elliott*, 363 F. Supp. 2d

439, 451 (N.D.N.Y. 2005) ("Disclosure of grand jury proceedings is available only by court order, and a defendant bears the burden of establishing a 'particularized need' or 'compelling necessity' for disclosure which outweighs the policy of grand jury secrecy.") (citations omitted). A defendant is not entitled to inspect grand jury minutes and evidence without producing "concrete allegations of Government misconduct." *United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994); *see United States v. Torres*, 901 F.2d 205, 232 (2d Cir. 1990) ("A review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct.").

Further, grand jury proceedings carry a "'presumption of regularity.'" *Hamling*, 418 U.S. at 139 n. 23. It is well settled that the mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the indictment. *See Williams*, 504 U.S at 54. Nor is an indictment valid on its face subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence. *See United States v. Calandra*, 414 U.S. 338, 345 (1974).

Here, the Court is presented with a facially valid Indictment and no factual allegations from defendant to support his claim of inaccuracies or misconduct. Although defendant requests production of grand jury transcripts, minutes, and exhibits, he puts forth no particular grounds for the requests. Unspecified allegations of impropriety or mere speculation do not satisfy the defendant's burden. *See Elliott*, 363 F. Supp. 2d at 451. Thus, defendant has failed to establish a particularized need or compelling necessity for disclosure of grand jury material. Nor has he shown a basis for dismissal.

For the reasons, the Court recommends denial of defendant's motion to dismiss for misconduct before the grand jury. To the extent that defendant requests grand jury

material that is not also 3500, *Brady,* or *Giglio* material, his motion for production of grand jury material is denied.

### e. Surplusage language

Defendant seeks to have repetitive language stricken from the Indictment as prejudicial and misleading pursuant to Fed. R. Crim. P. 7(d). Specifically, he requests that the Court issue an order "striking all repetitions of count 1 in the counts that follow." (Dkt. No. 32, ¶ 68).

Rule 7(d) of the Federal Rules of Criminal Procedure provides that, upon motion of the defendant, a court may strike surplusage from the indictment or information. The Advisory Committee Notes explain that Rule 7(d) "introduces a means of protecting the defendant against immaterial or irrelevant allegations in an indictment or information." *See* Advisory Committee Notes Regarding Rule 7(d). "Because the standard for surplusage is exacting, only rarely is alleged surplusage stricken from an indictment." *United States v. Gotti*, 42 F. Supp. 2d 252, 292 (S.D.N.Y. 1990). Motions to strike surplusages from an indictment will be granted only where the challenged allegations are "not relevant to the crime charged and are inflammatory and prejudicial." *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990) (quotation omitted). "If evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken." *Id*.

Defendant here offers no sound reasoning as to why such language should be struck. He explains only that "[t]his is a complex case and the repetitive language is prejudicial, confusing, and overwhelming." (Dkt. No. 32, ¶ 68). Defendant has not met his

burden to show that the specified language, or any other language, in the Indictment is irrelevant and inflammatory or prejudicial.

In sum, and for the above reasons, the Court recommends that defendant's several motions to dismiss the Indictment and his motion to strike language from the Indictment be denied.

## Omnibus Discovery Demands

### *Rule 16 Discovery and Expert Witnesses*

Defendant moves for discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure, which requires that the Government disclose evidence and information upon request of a defendant. (Dkt. No. 32, ¶¶ 69-85, 87-88).

While Rule 16 was intended to provide for liberal discovery, a defendant is not entitled to discovery of "the entirety of the Government's case against him." *United States v. Percevault,* 490 F.2d 126, 130 (2d Cir. 1974). Rule 16 provides that a defendant is entitled to the following: (1) a defendant's written, recorded or oral statements in the possession of the Government; (2) the defendant's prior record; (3) documents, objects, books, papers, photographs, etc. that will be used during the Government's case-in-chief; (4) reports of examinations or tests; (5) and information about expert witnesses in accordance with Federal Rules of Evidence 702, 703 and 705. *See* Fed. R. Crim. P. 16(a)(1). Rule 16 specifically exempts from disclosure "reports, memorandum, or other internal Government documents made by an attorney for the Government or other Government agent in connection with investigating or prosecuting the case." *See* Fed. R. Crim. P. 16(a)(2).

Here, defendant has requested, *inter alia*, copies of all written or recorded statements of defendant or his co-defendants or co-conspirators, investigative reports and logs, photographs, defendant's criminal history information, any identification evidence, search/seizure warrants and applications, a list of expert witnesses and their reports, and other physical evidence in the custody or control of the Government.

The Government submits that it has provided defendant with all requested items, in its possession, that are relevant to this case and discoverable pursuant to Rule 16. (Dkt. No. 35, pgs. 20-23). The Government represents that it is not in possession of any statements made by defendant but is in possession of statements made by unindicted co-conspirators, which constitute Jencks material and will be provided no later than two weeks prior to trial or as ordered by the District Court. (*Id.*, pg. 23). The Government further represents that it has produced all seizure warrants and applications to defendant.

Based upon the representations made by the Government, including that it will continue to provide discoverable evidence as it becomes available, the Court finds that the Government has complied with Rule 16. The Court therefore denies defendant's request as moot. The Government is reminded that its disclosure obligations continue up through and during trial. *See* Fed. R. Crim. P. 16(c).

<u>*Bruton Request*</u>

Defendant makes a request under *Bruton v. United States*, 391 U.S. 123 (1968) for an order requiring the Government to redact any portions of any oral or written statements or confessions by any non-testifying co-defendants or co-conspirators that the Government intends to introduce at trial that may tend to inculpate the defendant. (Dkt. No. 32, ¶¶ 89-91). The Government states that it anticipates unindicted co-conspirators

will testify at trial, thereby being subjected to cross-examination, and removing any *Bruton* issue. (Dkt. No. 35, pg. 23). In any event, as a general rule, this type of motion is best considered by the trial judge. *United States v. Anguiera*, 11-CR-116, 2012 U.S. Dist. LEXIS 51862 (W.D.N.Y. Apr. 12, 2012) ("[T]he relief sought for excluding non-testifying co-conspirator statements...[i]s better considered by the District Judge prior to trial and deferred for that consideration"). For this reason, the Defendant's request is denied without prejudice to renew this motion before the District Court.

### Bill of Particulars

Defendant moves for a bill of particulars. (Dkt. No. 32, ¶¶ 92-108). He seeks particularization as to, *inter alia*, the names of all unindicted co-conspirators, the means and manner of the alleged conspiracy, details of defendant's alleged specific acts, false statements, misrepresentations and knowledge, exact locations and dates of the charged offenses, and every document upon which the government will rely, for each count of the indictment. (*Id.*).

Federal Rule of Criminal Procedure 7(f) "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). However, "[t]he Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendants committed the crimes charged, or a preview of the Government's evidence or legal theories." *United States v. Rittweger*, 259 F. Supp. 2d 275, 291 (S.D.N.Y. 2003). In

determining whether a bill of particulars is warranted, a court is to consider "the complexity of the offense, the clarity of the indictment, and the degree of discovery otherwise afforded to defendants." *United States v. Shoher*, 555 F. Supp. 346, 349 (S.D.N.Y. 1983). Further, it is well-settled that acquisition of evidentiary detail is not the purpose of a bill of particulars. *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990).

Here, the 20-page speaking indictment provides detailed background to the charges and particulars of all charged crimes, including exact dates, the manner and methods used to commit the violations, descriptions of specific transactions, means of communication, financial institutions involved, and the elements of each offense charged. Further, the Government submits that it has already provided considerable additional information about the charges to the defendant through voluntary discovery. (Dkt. No. 35, pgs. 24-26).

Rule 16 discovery has been provided. Defendant is not permitted to use a bill of particulars to learn evidentiary detail or the Government's legal theory. The Indictment plainly allows defendant to identify the charges against him, avoid surprise at trial, and interpose a plea of double jeopardy if necessary. For these reasons, defendant's request for a bill of particulars is denied.

### Identity of Informants

Defendant moves for disclosure of the identities of all informants used by the Government in the course of its investigation. (Dkt. No. 32, ¶¶ 109-29). Defendant also seeks potential impeachment material as to these individuals. (*Id*.) The Government objects to this request on the grounds that defendant has not shown a particularized need for this information.

The Government has a qualified privilege to withhold information concerning the names of confidential informants that it does not intend to call as witnesses. *See Roviaro v. United States*, 353 U.S. 53, 60-62 (1957) (the purpose of the privilege is to encourage citizens to report criminal activity). The informant's privilege must give way, however, if disclosure is essential to a defense or the fair determination of the case. *United States v. Lilla*, 699 F.2d 99, 105 (2d Cir. 1983). To that end, a defendant seeking the identity of a confidential informant must make some evidentiary showing as to why disclosure is significant to determining defendant's guilt or innocence. *See United States v. Jimenez*, 789 F.2d 167, 170 (2d Cir. 1986) (explaining that defendants face a "heavy burden" of establishing that disclosure is essential to the defense); *Lilla*, 699 F.2d at 105 ("this requires some demonstration that in the absence of such disclosure the defendant will be denied a fair trial"); *United States v. Valenzuela-Bernal*, 458 U.S. 858, 871 (1982) (defendant need not show that the informant's testimony would actually be helpful to the defense, but instead "the events to which a witness might testify, and the relevance of those events to the crime charged").

Defendant has not provided any specific reasons as to why informant identities are material or necessary to his defense. He does not offer an explanation of what the informants might testify about, nor does he establish its relevance to the crimes charged here. Instead, defendant makes general statements that disclosure of informant information is necessary for the preparation of his defense for trial. This is insufficient to meet the burden. If and when an informant is to be called as witnesses at trial, defendant will have access to his or her identity as well as all relevant impeachment material, prior statements, and notes of their interviews. In addition, if an informant reveals exculpatory

information at any time, the Government has an ongoing duty to disclose this information in time for its effective use at trial. Thus, defendant's motion for disclosure of informant identities is denied.

### Disclosure of Brady Material

Defendant moves for an order compelling the disclosure of any favorable, exculpatory or impeachment materials pursuant to *Brady*, *Giglio* and their progeny.[5] (Dkt. No. 32, ¶¶ 130-57). "[A]s a general rule, *Brady* and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant." *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001). "[A]s long as a defendant possesses *Brady* evidence in time for its effective use, the Government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." *Id*. at 144.

The Government submits that it is mindful of its obligations under *Brady* and its progeny. (Dkt. No. 35, pgs. 27-30). The Government indicates that it will disclose exculpatory *Brady* material, should it become aware of any, in advance of trial. The Government agrees to provide impeachment *Brady* material, namely, promises of leniency or immunity agreements with witnesses, criminal records of witnesses, immoral or criminal acts committed by witnesses, and prior inconsistent statements, prior to the commencement of trial and when the Government produces *Jencks Act* material. Given the Government's representations, defendant's motion to compel the production of *Brady*/*Giglio* material is denied.[6] Consistent with *Coppa*, the Government is reminded of

---

[5] *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972).
[6] Defendant separately moves, pursuant to Rule 806 and the *Brady* doctrine, for an order directing the Government provide any evidence in its possession or under its control that would tend to impeach the

its continuing obligation to timely disclose any *Brady* and *Giglio* material to defendant. *See United States v. Padovani*, No. 14-CR-00224, 2016 WL 5402696, at *4 (WDNY Sept. 28, 2016).

### Early Disclosure of Witnesses and Jencks Act Materials

Defendant moves for the disclosure of witness names and statements no later than eight weeks prior to trial. (Dkt. No. 32, ¶¶ 86, 163-65). The Government has no general duty to disclose the identities of its witnesses before trial. *United States v. Bejasa*, 904 F.2d 137, 139 (2d Cir. 1990). Section 3500 of Title 18 of the United States Code requires that the Government, on motion of defendant, disclose a Government witness's prior statements that are in the Government's possession and relate to the subject matter of the witness's direct testimony. *See also Jencks v. United States*, 353 U.S. 657 (1957); Fed. R. Crim. P. 26.2 (procedure for producing a witness statement). A witness statement is defined as: (1) a written statement by a witness that is signed or otherwise adopted or approved by the witness; (2) a substantially verbatim recording or transcription of a witness's oral statement; or (3) any statement however taken or recorded made by the witness to the grand jury. 18 U.S.C. 3500(e).  Statements are not required to be produced, by law, until after the witness has testified on direct examination, and the Court cannot mandate that they be produced sooner. *See* 18 U.S.C. §3500(a); Fed. R. Crim. P 26.2(a).

Here, the Government indicates that, in advance of trial and in accordance with the District Judge's pretrial order, it will produce all material required by the *Jencks Act*. (Dkt. No. 35, pg. 35). The Government further indicates that it will disclose its witness list

---

credibility of any declarant whose declaration will be proffered at trial by the Government. (Dkt. No 20-9, pg. 53). This motion is duplicative of the *Brady* request and is similarly denied.

when ordered to do so by the District Court. In light of these representations, defendant's request for witness names and early disclosure of *Jencks* Act material is denied.

### Preservation of Rough Notes

Defendant moves for an order requiring all government agents and officers who participated in this investigation to retain and preserve all rough notes taken in the course of the investigation. (Dkt. No. 32, ¶¶ 166-68). The Government maintains that it will endeavor to maintain these materials, should they exist, but also objects that this motion includes material that may exceed the Government's obligation under 18 U.S.C. § 3500 and Fed. R. Crim. P. 26.2. (Dkt. No. 35, pg. 31). The Court grants defendant's motion to the extent it related to preservation of notes and directs the Government to arrange for the preservation of all rough notes and related information.

### Disclosure of Evidence Pursuant to Rules 404(b), 608 and 609

Defendant moves for disclosure of any evidence of prior crimes or bad acts the Government intends to introduce at trial pursuant to Federal Rule of Evidence 404(b). (Dkt. No. 32, ¶¶ 158-62). Defendant also moves for pretrial disclosure of impeachment evidence pursuant to Federal Rules of Evidence 608 and 609. (*Id*.) The Government states that it will provide reasonable notice in advance of trial of the general nature of prior uncharged crimes that it intends to use at trial under Rule 404(b). It further submits that it has no obligation to provide pre-trial notice of impeachment evidence under Rules 608 and 609 and will address same in its pre-trial memorandum to the District Court. The Government further states that, pursuant to Rule 404(b), it intends to introduce at trial, all prior criminal conduct acts or wrongs for the purpose of showing proof of a defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, and the absence of

mistake or accident. The Government indicates it will provide this information in reasonable time in advance of trial and when directed by the trial judge. The Government states that should it become aware of additional Rule 404(b), Rule 608, or Rule 609 evidence, it will notify defendant in advance of trial.

The Government is required to provide "reasonable notice in advance of trial" of the general nature of prior uncharged crimes or bad acts it intends to introduce against a defendant. *See* Fed. R. Evid. 404(b). Rule 608 of the Federal Rules of Evidence does not contain the same pretrial notice requirement. Based upon the Government's representation that it will disclose bad act or impeachment evidence prior to trial, defendant's motion is denied as moot. The Court instructs that any disclosure should be done in accordance with the District Court's pretrial order. The issue of admissibility of evidence pursuant to Federal Rules of Evidence 404(b), 608 and 609 is left to the determination of the District Court at the time of trial.

### <u>Preservation of Rough Notes</u>

Defendants move for an order requiring all federal, state or local agents and officers to retain and preserve all rough notes taken in the course of the investigation. (Dkt. No. 32, ¶¶ 55-56). The Government states that it will endeavor to maintain these materials, should they exist, but also objects that this motion includes material that may exceed the Government's obligation under 18 U.S.C. 3500 and Fed. R. Crim. P. 26.2. The Court grants defendant's motion and the Government is directed to preserve all rough notes and items of evidence. *See United States v. Jones*, 13-CR-193, 2014 U.S. Dist. LEXIS 84452, at *16 (W.D.N.Y. May 29, 2014), *report and recommendation adopted*,

2014 U.S. Dist. LEXIS 84023 (W.D.N.Y. June 19, 2014), (quoting *United States v. Coates*, U.S. Dist. LEXIS 105689, 2013 WL 3897484, at *5 (W.D.N.Y. July 29, 2013)).

### *Voir Dire of Government Experts*

Defendants move for permission to *voir dire* any proposed government experts outside the presence of the jury. (Dkt. No. 32, ¶¶ 169-74). The Government submits that the District Judge is better suited to address this request. The Court agrees that the District Judge who will preside over the trial of this case is best equipped to address this motion. Thus, the motion is denied without prejudice to renewal before the District Court.

### *Leave to File Additional Motions*

Defendant also moves to preserve his right to make further and additional motions. (Dkt. No. 32, ¶¶ 179-81). To the extent defendant intends to bring motions based upon new rulings, information or evidence, his request for leave to file additional motions is granted. To the extent defendant intends to bring motions concerning issues that could have been raised prior to the previous motion deadline, defendant's request is denied without prejudice to bringing the motion upon a showing of good cause for the untimely filing.

### *Government's Request for Reciprocal Discovery*

The Government moves for reciprocal discovery pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure including the opportunity to inspect, copy or photograph books, papers, documents, photographs, tangible objects or copies or portions thereof which are in the possession, custody or control of the defendant and which the defendant intends to introduce as evidence at trial, as well as the results or reports of any physical or mental examinations or scientific tests or experiments made in

connection with the case. (Dkt. No. 35, pgs. 33-34). The Government's motion for reciprocal discovery is granted, and defendant is reminded that his disclosure obligations continue up through and during trial. *See* Fed. R. Crim. P. 16(c).

## CONCLUSION

For the foregoing reasons, it is recommended that defendant's motions to dismiss and motion to strike be denied. (Dkt. No. 32). It is ordered that defendant's omnibus discovery demands are decided in the manner detailed above.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report, Recommendation, and Order be filed with the Clerk of Court.

Unless otherwise ordered by Judge Vilardo, any objections to the recommendations portion of this Report, Recommendation, and Order must be filed with the Clerk of Court within fourteen days of service of this Report, Recommendation, and Order in accordance with the above statute, Rules 59(b), 45(a), and 45(c) of the Federal Rules of Criminal Procedure, and Local Rule of Criminal Procedure 59.  Any requests for an extension of this deadline must be made to Judge Vilardo.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report, Recommendation and Order WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Criminal Procedure 59(c)(2), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

       **SO ORDERED**.

      Dated:  June 29, 2023
              Buffalo, New York

                                      */s/ Michael J. Roemer*
                                      MICHAEL J. ROEMER
                                      United States Magistrate Judge