UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

   v.

HORMOZ MANSOURI,

       Defendant.

22-CR-34-LJV-MJR
DECISION & ORDER

---

## **BACKGROUND**

The defendant, Hormoz Mansouri, was charged by indictment with one count of conspiracy to commit wire fraud and bank fraud in violation of 18 U.S.C. § 1349; twelve counts of bank fraud in violation of 18 U.S.C. §§ 1344(2) and 2; nineteen counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2; and eight counts of money laundering in violation of 18 U.S.C. § 1957(a).  Docket Item 14.  The case was assigned to this Court, and on March 10, 2022, this Court referred the case to United States Magistrate Judge Michael J. Roemer for all purposes under 28 U.S.C. § 636(b)(1)(A) and (B).  Docket Item 16.

On October 31, 2022, Mansouri filed an omnibus motion seeking, *inter alia*, to dismiss the indictment, to strike language from the indictment, and to obtain various discovery and disclosures.  Docket Item 32.  On December 12, 2022, the government responded to the omnibus motion, Docket Item 35, and on January 9, 2023, Mansouri replied, Docket Item 41.  Judge Roemer heard oral argument on March 8, 2023, *see* Docket Item 48, and the parties submitted supplemental briefing on May 17, 2023,

Docket Items 55, 56.  On June 29, 2023, Judge Roemer issued a Report, Recommendation, and Order ("RR&O") finding that Mansouri's motions to dismiss and to strike should be denied.  Docket Item 58 at 3-24.  Judge Roemer also resolved the non-dispositive motions and discovery issues.  *Id.* at 24-34.

On July 13, 2023, Mansouri objected to the RR&O, Docket Item 59, and he filed a memorandum of law in support of his objections on August 29, 2023, Docket Item 68. On September 19, 2023, the government responded, Docket Item 69, and on October 12, 2023, this Court heard oral argument, Docket Item 72.  The Court requested additional submissions, and those submissions were filed on October 25, 2023, *see* Docket Item 75 (Mansouri's submission), and November 6, 2023, *see* Docket Item 76 (government's submission).

## **LEGAL PRINCIPLES**

A district court may accept, reject, or modify the findings or recommendation of a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3).  The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects.  28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3).

This Court has carefully and thoroughly reviewed the RR&O; the record in this case; and the objections, response, reply, and supplemental briefing.  Based on that *de novo* review, the Court accepts and adopts Judge Roemer's recommendation to deny the defendant's motions to dismiss and to strike.

## FACTS

Between around April 2020 and February 2021, Mansouri was the owner, majority owner, managing partner, managing member, managing sole member, or sole member of seven limited liability companies ("LLCs") and two corporations.[1]  Docket Item 14 at ¶¶ 2-9, 25-26.  The indictment alleges that through two of his employees and on behalf of those entities, Mansouri submitted multiple fraudulent applications for loans under the Paycheck Protection Program ("PPP")[2] and Economic Injury Disaster Loan ("EIDL")[3] program, both established by the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act").  *See generally id.* at ¶¶ 11-17, 24-40; Docket Item 69 at 2-5.  More specifically, the indictment alleges that the loan applications included materially false and fraudulent information, pretenses, representations, and promises supported

---

[1] The LLC companies are HLM Holding LLC; 2060 Sheridan Drive, LLC; 212 Holden Avenue LLC; 350 Old Niagara Falls Boulevard LLC; 47 East Amherst LLC; and 3600 Harlem Road LLC.  Docket Item 14 at ¶¶ 2-7.  The two corporations are EI Team Inc. and NPTS Inc.  *Id.* at ¶¶ 8-9.

[2] The PPP specifically provided forgivable loans to small businesses for job retention and other expenses incurred during the Covid 19 pandemic.  Docket Item 14 at ¶¶ 11-14. To obtain a PPP loan, a qualifying business had to submit an application that included certain affirmative certifications, including such information as the average monthly payroll expenses and number of employees.  *Id.* at ¶ 12.  PPP loan applications were processed by a participating lender, which, pending approval, would fund the loan using its own monies guaranteed by the Small Business Administration. *Id.* at ¶ 13.  The PPP loan proceeds were supposed to be used only for certain permitted expenses, and the interest and principal were eligible for forgiveness only if the business spent the money on these items within a designated period of time and used a certain portion for payroll expenses.  *Id.* at ¶ 14.

[3] The EIDL program was designed to provide economic relief to businesses suffering a temporary loss of revenue due to COVID-19.  Docket Item 14 at ¶¶ 15-17.  The EIDL program provided low interest loans to pay for certain expenses, including payroll; paid sick leave for employees; increased production costs; and business obligations such as debts, rent, and mortgage payments.  *Id.* at ¶ 16.

by false and fictitious documents created by Mansouri or his employees.  Docket Item 14 at ¶¶ 24-40; Docket Item 69 at 4-5.

According to the indictment, the PPP loan applications inflated or fabricated the average monthly payroll of each entity; in fact, the indictment says, only the two corporations had employees, and the other entities were holding companies with no employees or payroll expenses.  Docket Item 14 at ¶¶ 29-31; Docket Item 69 at 4.  Likewise, the indictment alleges that the EIDL applications falsely represented revenues and cost of goods sold.  Docket Item 14 at ¶¶ 32-33; Docket Item 69 at 4-5.  And the indictment alleges that the false information submitted in support of both sets of applications was material because the lenders relied on that information when deciding whether to make the requested loans.  Docket Item 14 at ¶ 27; Docket Item 69 at 5.

The indictment charges that based on the fraudulent and false information in the applications, multiple federally insured financial institutions sent funds to bank accounts controlled by Mansouri.  Docket Item 14 at ¶¶ 35-38; Docket Item 69 at 5.  And it charges that Mansouri then moved the funds through numerous banks accounts to disguise the nature, location, source, ownership, or control of the proceeds—thus laundering the money derived from the illegal activity.[4]  Docket Item 14 at ¶¶ 39-40; Docket Item 69 at 5.

---

[4] The indictment also included forfeiture allegations for funds seized from bank accounts and for a vehicle controlled or owned by Mansouri.  Docket Item 14 at ¶¶ 41-42.

**DISCUSSION**

The RR&O recommends[5] that Mansouri's motions to dismiss and to strike be denied. Docket Item 58 at 3-24. For the reasons that follow, this Court accepts those recommendations and denies the motions to dismiss and to strike.

Federal Rule of Criminal Procedure 7 provides that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." Fed. R. Crim. P. 7(c)(1). An indictment must set forth "all of the essential elements of the crime." *United States v. Gonzalez*, 686 F.3d 122, 127 (2d Cir. 2012) (citations omitted). Each element must be included, but the Second Circuit generally has found an indictment sufficient when it "tracks the language of the statute." *United States v. Frias*, 521 F.3d 229, 235-36 (2d Cir. 2008).

Mansouri objects on two grounds. First, he argues that the indictment should be dismissed because his case is analogous to *Ciminelli v. United States*, 598 U.S. 306 (2023), a recent decision in which the Supreme Court rejected a "right-to-control" theory of wire fraud. *See* Docket Item 68 at 6-9. He says that Judge Roemer erred by relying on pre-*Ciminelli* cases to conclude that Mansouri committed fraud simply by virtue of false representations. *Id.* Second, Mansouri argues that his actions do not qualify as wire or bank fraud because the banks and financial institutions that he allegedly defrauded suffered no actual loss of property. *Id.* More specifically, he says that

---

[5] Mansouri did not object to Judge Roemer's recommendation that his motion to strike be denied; the Court therefore adopts that recommendation without addressing the issue. The RR&O also resolved certain non-dispositive motions and discovery issues. Neither side appealed those portions of the RR&O, and the Court therefore does not address them further.

5

however false or misleading his statements and representations may have been, they were not intended to, and in fact did not, cause any actual injury to any specific lender because the Small Business Administration ("SBA") fully funded the PPP and EIDL program and reimbursed any losses.  *Id.*

For the reasons that follow, both arguments lack merit.

I.     ***Ciminelli***

*Ciminelli* involved a scheme by political operatives to tailor a state-funded bidding process so that LPCiminelli (Ciminelli's construction company) was virtually guaranteed to be designated a "preferred developer."  598 U.S. at 309-10.  That status, in turn, ensured that LPCiminelli would be chosen for construction projects that were part of the lucrative "Buffalo Billion" program.  *Id.*  The government in that case relied exclusively on the "right-to-control" theory: that the defendant schemed to deprive a victim of potentially valuable economic information necessary to make discretionary economic decisions.  *Id.* at 310-311.

The Supreme Court rejected that theory as "unmoored" from the text of the federal fraud statutes, which are "limited in scope to the protection of property rights." *Id.* at 314-15 (citation omitted).  It held that the wire fraud statute reaches only traditional property interests such as money and that those interests do not include the right to information needed to make discretionary economic decisions.  *Id*. at 316.

Mansouri argues that the charges against him likewise involve the deprivation of economic information—not money or other property.  *See* Docket Item 68 at 3; Docket Item 75 at 4.  But as discussed thoroughly in the RR&O, Mansouri's alleged scheme, unlike the one in *Ciminelli*, involved false statements designed precisely to obtain

money, fitting well within the realm of "traditional property interests" identified by the Supreme Court. Docket Item 58 at 13. As Judge Roemer noted, "the object of [Mansouri]'s fraud in this case was money belonging to the financial lenders and the SBA," and the "applications containing material misrepresentations were the means [Mansouri] used to deprive the lenders and the SBA of their money and property." *Id.*

Indeed, unlike the *Ciminelli* indictment, the indictment here says nothing about depriving the lenders or the SBA of their "right to control" property. *See United States v. Pierre*, 2023 WL 4493511, at *15 (S.D.N.Y. July 12, 2023) (citations omitted) (similarly rejecting a defendant's reliance on *Ciminelli* in a healthcare fraud conspiracy case). And *Ciminelli*'s discussion was limited to the "right-to-control" theory, as that was the only theory on which the government relied; the Supreme Court said "nothing about federal criminal liability for [] schemes" whose object was money itself, "the archetypal subject of federal fraud prosecutions." *United States v. Jesenik*, 2023 WL 3455638, at *2 (D. Or. May 15, 2023) (citing *Shaw v. United States*, 580 U.S. 63, 67 (2016)); *see also United States v. Greenlaw*, 84 F.4th 325, 347 n.11 (5th Cir. 2023) (rejecting defendant's appellate arguments based on *Ciminelli* because the government did not rely on the "right-to-control" theory at trial).

For those reasons and for the reasons in the RR&O, *Ciminelli* simply is not relevant to the sufficiency of the indictment here.

**II.    Harm and Injury**

The federal mail and wire fraud statutes prohibit using the mail or a wire communication to execute "any scheme or artifice to defraud" or to obtain "money or property by means of false or fraudulent pretenses, representations, or promises." 18

7

U.S.C. §§ 1341, 1343.  The wire fraud statute requires proof of a "scheme or artifice to defraud."  *See United States v. Greenberg*, 835 F.3d 295, 305-06 (2d Cir. 2016) (quoting 18 U.S.C. § 1343).  But the government need not prove "that the victims of the fraud were actually injured"; proof that the defendants made false or fraudulent statements and "contemplated some actual harm or injury to their victims" will suffice.  *Id.* (citing, *inter alia, United States v. Novak*, 443 F.3d 150, 156 (2d Cir. 2006)).

Mansouri argues that because the loans he sought were guaranteed by the SBA, the financial institutions who loaned the money could not have suffered any financial loss or loss of property and that the indictment therefore is insufficient.  Docket Item 68 at 3-4, 6-9.  But as the RR&O discusses, both the Supreme Court and the Second Circuit have frequently rejected similar arguments in fraud cases.  Docket Item 58 at 13-14.

For example, in *Shaw v. United States*, 580 U.S. 63 (2016), the Supreme Court noted that it had never interpreted the bank fraud statute as "requiring that the victim bank ultimately suffer financial harm, or that the defendant intend that the victim bank suffer such harm."  *Id.* at 68; *cf. Loughrin v. United States*, 573 U.S. 351, 366 n.9 (2014) (citations and internal quotation marks omitted) (defendant's argument that the government must prove the scheme created a risk of financial loss "fits poorly with our prior holding that the gravamen of § 1344 [bank fraud] is the scheme, rather than the completed fraud, and that the offense therefore does not require damage or reliance.").[6]

---

[6] As the Supreme Court observed in *Loughrin*, the absence of such an element "appears calculated to avoid entangling courts in technical issues of banking law about whether the financial institution or, alternatively, a depositor would suffer the loss from a successful fraud."  573 U.S. at 366 n.9 (citations omitted).

8

Likewise, as Judge Roemer observed, the Second Circuit has found that a defendant may be held criminally liable for a scheme to defraud even if the defendant timely repaid the loan or the fraud was not "completed." Docket Item 58 at 14 (citing cases). And as Judge Roemer also noted, numerous courts outside the Second Circuit have found fraudulent PPP loan applications similar to those here sufficient to support wire and bank fraud indictments. *Id.* at 14-15 (collecting cases).

Mansouri argues that some cases on which the RR&O relies are no longer good law because *Ciminelli* "change[d] the landscape." Docket Item 68 at 6. But this Court is not persuaded, primarily because, as already discussed, *Ciminelli* is far different. And other courts also have rejected similar requests to expand *Ciminelli*'s holding and to dismiss indictments for failure to allege a valid property right. *See, e.g.*, *United States v. Bankman-Fried*, 2023 WL 4194773, at *8 (S.D.N.Y. June 27, 2023) (declining to dismiss defendant's bank fraud conspiracy charge in light of *Ciminelli* because statute does not require that the alleged scheme to obtain money or property create a risk of financial loss to the bank); *Greenlaw*, 84 F.4th at 346-47 (post-*Ciminelli* case citing *Shaw* and upholding fraud convictions despite no evidence of actual loss because the "success of the scheme is immaterial").

Taken to its logical conclusion, Mansouri's argument would preclude fraud indictments whenever the loss to the defrauded institutions was covered by insurance or was otherwise reimbursable. That has never been the law. *See Shaw*, 580 U.S. at 68; *Greenlaw*, 84 F.4th at 346. Therefore, and because actual loss is not necessary for a fraud conviction, *see Loughrin*, 573 U.S. at 466 n.9; *Shaw*, 580 U.S. at 67, the fact that the losses here were reimbursable does not require dismissal of the indictment.

9

## CONCLUSION

For the reasons stated above and in the RR&O, the defendant's motions to dismiss and to strike, Docket Item 32, are DENIED.

SO ORDERED.

Dated:   December 5, 2023
         Buffalo, New York

_____
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE