IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

        v.                                    22-CR-34-LJV

HORMOZ MANSOURI,

                Defendant.

---

**GOVERNMENT'S SENTENCING MEMORANDUM**

THE UNITED STATES OF AMERICA, by and through its attorney, Michael DiGiacomo, United States Attorney for the Western District of New York, and Assistant United States Attorney Paul E. Bonanno, files this memorandum with respect to the defendant's sentencing.

**APPLICABLE LAW**

Title 18, United States Code, Section 3553(a) requires the Court to impose a sentence "sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with correctional treatment in the most effective manner.   18 U.S.C. § 3553(a)(2).

In determining an appropriate sentence, the Court must first correctly calculate the applicable Guidelines range.   *See Gall v. United States*, 552 U.S. 38, 49 (2007).   "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting

point and the initial benchmark." *Id.*   While the Guidelines are advisory, an error in determining the applicable Guidelines range could render a sentence unreasonable on appellate review.   *See United States v. Selioutsky*, 409 F.3d 114, 118 (2d Cir. 2005).

After providing the parties an opportunity to argue for a sentence they deem appropriate, the Court must "consider all the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall*, 552 U.S. at 49-50.   In determining whether the § 3553(a) factors support the requested sentence, the Court "must make an individualized assessment based on the facts presented." *Id.* at 50.   To that end, "[n]o limitation shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which a court . . . may receive and consider for the purpose of imposing an appropriate sentence."   18 U.S.C. § 3661.

Finally, after determining the sentence, the Court must "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing."   *Gall*, 552 U.S. at 50.   "The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority."   *Rita v. United States*, 551 U.S. 338, 356 (2007).

## STATEMENT OF FACTS

The government concurs with and relies upon the detailed statement of facts set forth in paragraphs 16 through 58 of the Presentence Investigation Report ("PSR") (Dkt. 114).

## ARGUMENT

The defendant stole money that was intended to help businesses struggling to deal with the COVID-19 pandemic. Because of the defendant's actions, over $3 million in emergency relief money was not disbursed to Americans who desperately needed it. This conduct warrants a substantial sentence of imprisonment.

In 2020, as the COVID-19 pandemic was causing unimaginable suffering and hardship, the United States government passed the CARES Act, which consisted of the Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan ("EIDL") Program, to provide emergency financial assistance to millions of Americans. PSR ¶ 17. Under the PPP and EIDL programs, American businesses could obtain forgivable or low-interest loans to help them maintain operations through the COVID pandemic. *Id.*

The defendant treated the government's emergency relief programs as an opportunity to enrich himself. Beginning in April 2020 and continuing through February 2021, the defendant directed two of his employees to submit numerous applications for PPP and EIDL loans on behalf of his companies using false and fraudulent information. *Id.* ¶ 36. In total, the defendant caused his employees to submit PPP loan applications for eight of the defendant's business entities, resulting in 16 PPP loans (two per entity) in an aggregate amount of $3,074,431.70. *Id.* ¶ 40. In addition, seven of the defendant's entities received EIDL funds in an aggregate amount of $450,600. *Id.* ¶ 43.

The defendant's misrepresentations in the PPP and EIDL applications were not *de minimis*.   The defendant directed his employees to file applications utilizing profit, cost, and payroll figures that were either entirely fabricated or highly inflated.   He directed applications be filed for loans on behalf of business entities that had no employees whatsoever.   He even went so far as to fabricate IRS payroll forms (Form 941s) to substantiate his fraudulent payroll claims.   *Id.* ¶¶ 48, 55.   These fraudulent figures were relied upon by the SBA and participating banks when making the PPP and EIDL loans.   *Id.* ¶ 38.

In short, through lies and deceit, the defendant obtained millions of dollars in emergency relief funds to which he was not entitled.   It bears noting that Congress appropriated a finite amount of money under the CARES Act.   Because of this, every dollar that the defendant obtained through fraud was a dollar that was not available to a struggling business.

Moreover, the defendant used the COVID relief money for his personal benefit.   As set forth in the PSR, the defendant paid hundreds of thousands of dollars of COVID relief funds to casinos to cover the defendant's gambling activity.   PSR ¶¶ 50, 53.   The defendant transferred another $200,000 of COVID relief money to a newly opened bank account in the name of the defendant's campaign for local political office, "Mansouri for County Comptroller."   PSR ¶ 50.

The defendant plainly knew that the COVID relief funds were not intended to be used for gambling at casinos or to run a political campaign.   Indeed, he controlled the bank

accounts into which the funds were deposited and made numerous transfers among the bank accounts, indicating that he was trying to conceal the nature and source of the funds. *Id.* ¶¶ 45, 52.   In other words, the defendant knew that what he was doing was wrong and he tried to hide it.

## CONCLUSION

The defendant exploited a national emergency to unlawfully enrich himself.   Given the egregious nature of the defendant's conduct, the government recommends the Court impose a sentence that includes a lengthy term of imprisonment.   Such a sentence will reflect the seriousness of the offense, provide just punishment, and afford specific and general deterrence.

DATED:      Buffalo, New York, May 30, 2025

MICHAEL DIGIACOMO
United States Attorney

BY:    s/ PAUL E. BONANNO
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5873
Paul.Bonanno@usdoj.gov